UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETZAIDA ARROYO,<br>   Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Commissioner of Social Security. | :<br>:    CIVIL ACTION<br>:<br>:<br>:<br>:    No. 21-cv-05087-RAL<br>: |

**RICHARD A. LLORET**                                                                **August 23, 2022**
**U.S. Magistrate Judge**

## MEMORANDUM OPINION

Betzaida Arroyo filed a claim for disability insurance benefits ("DIB") with the Commissioner of Social Security. An Administrative Law Judge ("ALJ") denied her application, and the Appeals Council affirmed the ALJ's decision. Ms. Arroyo alleges that the ALJ failed to adequately consider evidence concerning her hand arthralgia, headaches, and fatigue. The Commissioner responds that the ALJ's conclusions are supported by substantial evidence. After careful review, I agree with the Commissioner and find that the ALJ's decision is supported by substantial evidence. Furthermore, I find that error on the part of the ALJ, if any, is harmless. For the reasons set forth below, I deny Ms. Arroyo's request for review and affirm the final decision of the Commissioner.

## PROCEDURAL HISTORY

On June 12, 2020, Ms. Arroyo filed claims for DBI, alleging a disability beginning on June 18, 2019. Administrative Record ("R.") 95–96. Her claim was initially denied on September 23, 2020, R. 125, and it was subsequently denied on reconsideration on December 17, 2020, R. 130.

1

On January 12, 2021, Ms. Arroyo requested an administrative hearing before an ALJ. R. 134. The ALJ held a hearing on April 15, 2021 and issued a decision denying Ms. Arroyo's claim on May 5, 2021. R. 22, 25, 37. On May 14, 2021, Ms. Arroyo appealed the ALJ's unfavorable decision to the Social Security Administration's Appeals Council. R. 203. The Appeals Council denied Ms. Arroyo's request for review on October 25, 2021. R. 1. On November 18, 2021, Ms. Arroyo filed this appeal in federal court. Doc. No. 1.

The parties consented to my jurisdiction (Doc. No. 4) and have briefed the appeal. Doc. No. 6 ("Pl. Br.") and 7 ("Comm'r Br.").

## FACTUAL BACKGROUND

### A. The Claimant's Background

Ms. Arroyo was thirty-eight years old on her alleged disability onset date, making her a "younger person" under the regulations. R. 35; 20 C.F.R. § 404.1563. She has at least a high school education. R. 35. She is unable to perform her past relevant work as a medical assistant and nurse assistant. *Id.* Ms. Arroyo alleges disability based on fibromyalgia, transient ischemic attacks, anti-phospholipid syndrome, bilateral hip bursitis, joint arthralgia shoulder/cervical radiculopathy/knee/hands [sic], blood clotting disorder, migraines, abdominal pain, iron and vitamin D deficiency, and pelvic pain. R. 95–96.

### B. The ALJ's Decision

On May 5, 2021, the ALJ issued her decision finding that Ms. Arroyo was not eligible for DBI because she was not under a disability, as defined by the Social Security

Act. R. 22, 25, 37. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation.[1]

At step one, the ALJ concluded that Ms. Arroyo has not engaged in substantial gainful activity ("SGA") since June 18, 2019. R. 27. At step two, the ALJ determined that Ms. Arroyo had the following severe impairments: arthralgia of both hands; anticardiolipin antibody positive; hypercoagulable state; polyclonal gammopathy; fibromyalgia; bursitis of the hips; cervical and lumbar disc disease; and obesity. R. 27–28.

At step three, the ALJ compared Ms. Arroyo's impediments to those contained in the Social Security Listing of Impairments ("listing"),[2] finding that she met no listing criteria, including Listings 1.15 and 1.16 for cervical and lumbar spine disorders and Listing 1.18 for abnormality of a major joint in any extremity. R. 28–29. Prior to undertaking her step four analysis, the ALJ assessed Ms. Arroyo's residual functional capacity ("RFC"), or "the most [Ms. Arroyo] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ found that Ms. Arroyo could undertake sedentary work

---

[1] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of her past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration her residual functional capacity, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v).

[2] The regulations contain a series of "listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id.*

as defined in 20 C.F.R. § 404.1567(a), subject to certain limitations.[3] R. 29–35. At step four, the ALJ found that Ms. Arroyo could not perform her past relevant work as a medical assistant or a nurse assistant, as defined by 20 C.F.R. § 404.1565. R. 35. At step five, the ALJ identified three jobs that Ms. Arroyo could perform considering her age, education, work experience, and RFC: envelope addresser, call out operator, and food/beverage order clerk. R. 35–36. Because the ALJ identified jobs that Ms. Arroyo could perform which exist in substantial numbers in the national economy, she found that Ms. Arroyo was "not disabled." R. 36–37.

## STANDARDS OF REVIEW

My review of the ALJ's decision is deferential; I am bound by her findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's decision is supported by substantial evidence, her disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g). "A reviewing court reviews an agency's reasoning to determine whether it is 'arbitrary' or 'capricious,' or, if bound up with a record-based factual conclusion, to determine whether it is supported by 'substantial evidence.'" *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999).

---

[3] Specifically, the ALJ found that Ms. Arroyo is limited to "occasionally climb ramps and stairs," "never climb ladders, ropes, or scaffolds," "occasionally perform all other postural maneuvers," "frequently reach, handle, and finger with the upper extremities," "no exposure to moving mechanical parts or to unprotected heights," and never operating a motor vehicle. R. 29–30.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

An ALJ must provide sufficient detail in her opinion to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000). When dealing with conflicting medical evidence, the ALJ must describe the evidence and explain her resolution of the conflict. *Id.* at 121. As the Third Circuit observed in *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999):

5

> When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. *See Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983).

While it is error for an ALJ to fail "to consider and explain [her] reasons for discounting all of the pertinent evidence before [her] in making [her] residual functional capacity determination," *Burnett*, 220 F.3d at 121, an ALJ's decision is to be "read as a whole," *see Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379–80 (3d Cir. 2004) (examination of the opinion as a whole permitted "the meaningful review required by *Burnett,*" and a finding that the "ALJ's conclusions [were] . . . supported by substantial evidence."). The reviewing court, by reading the ALJ's opinion as a whole against the record, should be able to understand why the ALJ came to her decision and identify substantial evidence in the record supporting the decision. *See Burnett*, 220 F.3d at 119–20; *Caruso*, 99 F. App'x at 379.

The regulations reserve the RFC determination for the ALJ. *See* 20 C.F.R. § 404.1546(c) ("[T]he administrative law judge ... is responsible for assessing your residual functional capacity."); 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."); *see also Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (in assessing a claimant's RFC, the ALJ is required to consider "all relevant evidence" and adequately explain the basis for the RFC determination). Relevant evidence includes "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli*, 247 F.3d at 41. Although the ALJ does not need to reference every piece of evidence in the record,

particularly when the medical records are "voluminous," *id.* at 42, she must provide a "clear and satisfactory" explanation of her decision. *See id.* at 41; *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981). Otherwise, the district court is unable to meaningfully review the decision and determine "if significant probative evidence was not credited or simply ignored." *See Fargnoli*, 247 F.3d at 42 (quoting *Burnett*, 220 F.3d at 121).

## DISCUSSION

Ms. Arroyo argues that the ALJ erred by failing to incorporate limitations presented by her hand arthralgia, headaches, and fatigue into her RFC analysis. Doc. No. 6, at 2–10. In particular, Ms. Arroyo contends that had the ALJ found she only had the ability to occasionally use her hands at work, alongside further limitations presented by her fatigue and migraine headaches, she would have been found disabled. *Id.* at 3. The Commissioner responds that the ALJ's RFC assessment is supported by substantial evidence. Doc. No. 7, at 4–12. The Commissioner further asserts that "a limitation to frequent reaching, handling, and fingering generously accounted for Plaintiff's alleged limitations," *id.* at 6–9, and "there is no evidence that Plaintiff experienced any mental limitations as a result of her headaches, or that she would be excessively absent as a result of them," *id.* at 10–12.

After carefully reviewing the record, I find that the ALJ's RFC analysis is supported by substantial evidence, and even if the ALJ committed error in addressing the impacts of Ms. Arroyo's hand arthralgia, any error is harmless.

> **A. The ALJ's conclusion that Ms. Arroyo should be limited to frequently reaching, handling, and fingering with the upper extremities is supported by substantial evidence.**

Ms. Arroyo asserts that the ALJ erred by not limiting Ms. Arroyo to occasionally reaching, handling, and fingering with the upper extremities, and her RFC conclusion is

7

not supported by substantial evidence. Doc. No. 6, at 3, 8–9. I find, however, that the ALJ's conclusion is supported by the record and that she reasonably resolved differences between opinions from two state agency physicians on this matter. Furthermore, even were I to find the ALJ committed error on this matter, the error would be harmless, as this adjustment to Ms. Arroyo's RFC alone would not alter the ALJ's ultimate conclusion.

      The ALJ concluded that "[t]here is some reference to arthralgia in her hands, but records do not document persistent positive clinical findings." R. 31. She noted that, as of September 2019, Ms. Arroyo complained of finger pain. R. 32. The ALJ also summarized a note from March 2020 indicating that she had "minimal tremor with hand grip and fine finger movement," as well as "some weakness," and she had some reduction in her left grip but with normal sensation. R. 32–33. As to the opinions of the state agency physicians, the ALJ concluded that state agency physician Dr. Edwin Malloy's finding that Ms. Arroyo had reduced fingering and feeling had no support in the record, whereas state agency consultant Dr. Charles Joseph Hubbard Jr. was more persuasive in recommending no manipulative limitations. R. 34–35.

      Ms. Arroyo contends that the ALJ erred by not considering the totality of evidence concerning her hand arthralgia from her rheumatology and neurology records. Doc. No. 6, at 4–6 (citing R. 318, 320–21, 363, 400, 405, 447–50, 985, 1060, 1094), 8–9. After reviewing the record, I find that the ALJ's conclusion is supported by substantial evidence in the record. For instance, one rheumatology progress note dated July 9, 2019 explains that Ms. Arroyo has intermittent pain and swelling of her hands. R. 447. Another rheumatology note dated November 28, 2018 explains that she has arthralgia but that she is experiencing clinical improvement. R. 405. These notes

support the ALJ's finding that Ms. Arroyo suffers a severe impairment of hand arthralgia. Ms. Arroyo's rheumatology progress note dated September 19, 2019, however, does not mention any issues concerning her hands or the diagnosed arthralgia. *See* R. 482–83. Furthermore, a neurology progress note dated March 5, 2019 shows that Ms. Arroyo is negative for arthralgias. R. 1062. These records support the ALJ's conclusion that "there was not persistent positive clinical findings demonstrating that [hand arthralgia] was an ongoing problem."[4] R. 31.

      I also find that the ALJ's decision to credit the state agency report of Dr. Hubbard over that of Dr. Malloy is supported by substantial evidence. In light of the above analysis, the ALJ concluded that the limitations presented by Dr. Malloy were not supported by the record, and found Dr. Hubbard's conclusion that she had no manipulative limitations more persuasive. R. 34–35. Despite crediting Dr. Hubbard's conclusion, the ALJ nevertheless limited Ms. Arroyo's RFC to frequently reaching, handling, and fingering. R. 30. For the same reasons the ALJ's conclusions concerning Ms. Arroyo's hand arthralgia are supported by substantial evidence, I find the ALJ's assessment here to be supported by substantial evidence.

      Even if I found that the ALJ's conclusions concerning Ms. Arroyo's hand arthralgia were not supported by substantial evidence, the error would be harmless. As a general matter, harmless error analysis is applicable to review of agency decisions.

---

[4] Ms. Arroyo asserts that the ALJ misread a neurologist's progress note dated March 4, 2020 to support the conclusion that hand arthralgia is not present. Doc. No. 6, at 9. This is not a fair representation of the ALJ's opinion. The ALJ never asserts that hand arthralgia is not present. She goes so far as to identify it as a severe impairment at step two. R. 27. The ALJ merely contends that the condition does not consistently appear in Ms. Arroyo's medical records. *See* R. 31 ("There is some reference to arthralgia in her hands, but records do not document persistent positive clinical findings."). The purpose of the RFC analysis is to evaluate based on relevant evidence "the most [a claimant] can still do despite [her] limitations." *See* 20 C.F.R. § 404.1545(a)(1). I find the ALJ reasonably construed the evidence of record.

*See Shinseki v. Sanders*, 556 U.S. 396, 407–11 (2009) (harmless error analysis applied to review of VA administrative determination); *McLeod v. Astrue*, 640 F.3d 881, 887–88 (9th Cir. 2011) (applying the harmless error analysis in *Sanders* to the review of Social Security determinations); *Watts ex rel. D.W. v. Astrue*, No. CIV. 12-4116, 2013 WL 2392909, at *3–4 (E.D. Pa. June 3, 2013) (same); but *see Sojourner v. Astrue*, No. CIV.A. 09-5662, 2010 WL 4008558, at *3 (E.D. Pa. Oct. 12, 2010) (*Sanders* applies in VA cases, not necessarily in Social Security cases). Harmless error analysis requires a particularized evaluation of the specific circumstances of the case to determine whether a supposed error would make a difference on remand. *See Sanders*, 556 U.S. at 408, 410–12 (harmless error focuses on "the facts and circumstances of the particular case" and counsels a "hesitancy to generalize too broadly about particular kinds of errors" because "the specific factual circumstances in which the error arises may well make all the difference.").

      Pursuant to the vocational expert's testimony, it is unlikely that the ALJ would reach a different conclusion on a remand by merely reducing Ms. Arroyo's ability to reach, handle, and figure from frequent to occasional. The vocational expert testified that a reduction in Ms. Arroyo's RFC to occasional reaching, handling, and fingering would still allow for her to work as a callout operator. R. 61. Under the regulations, this finding would support a conclusion that Ms. Arroyo is not disabled. *See* 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications."); *see also Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (finding the failure to include a limitation in a claimant's RFC to be harmless error when the vocational expert was questioned

10

about the contested limitation and the vocational expert opined that jobs would be available given the limitation). Accordingly, remanding on the basis of this evidence alone would not change the outcome of the case.

### B. The ALJ's analysis of the impacts of Ms. Arroyo's headaches and fatigue on her RFC is supported by substantial evidence.

Ms. Arroyo also asserts that the ALJ's conclusions concerning her headaches and fatigue are not supported by substantial evidence. Ms. Arroyo contends the ALJ did not appropriately consider her headaches and fatigue as "mental limitations or restrictions," and did not incorporate them accordingly into her RFC analysis. Doc. No. 6, at 8. I find that neither contention has merit, and I will affirm the ALJ's opinion accordingly.

As an initial matter, Ms. Arroyo's argument that the ALJ erred by not evaluating her headaches and fatigue as "mental limitations or restrictions" under SSR 96-9p is devoid of merit. Ms. Arroyo cites no authority for this proposition, nor can I find any in my independent search. Under SSR 96-9p, mental limitations or restrictions are considered those which impact the ability to follow simple instructions; make simple work-related decisions; "respond[] appropriately to supervision, co-workers, and usual work situations;" and "deal[] with changes in a routine work setting." SSR 96–9p, 1996 WL 374185, at *9 (S.S.A.). Headaches and fatigue may indirectly impair these abilities, but they are not themselves disorders directly impacting one's cognitive abilities. *Cf.* 20 C.F.R. Pt. 404, Subpt. P., App. 1. § 12.00(A)(1) (not including headaches or fatigue, or similar conditions, among the "listings" for mental disorders).

After an independent review of the record, I find that the ALJ's resolution of Ms. Arroyo's headaches and fatigue is supported by substantial evidence. The ALJ noted that Ms. Arroyo had some residual fatigue following her Covid-19 diagnosis in April 2020. R.

11

27–28. The ALJ cited a record noting increasing fatigue in June 2019. R. 31. She also referred to Ms. Arroyo's emergency room visit in March 2019, where she complained of headaches following a spinal tap and fatigue. R. 32. Furthermore, the ALJ cited records concerning complaints of "mild headache" and a July 2020 MRI showing "stable, non-specific white matter disease." R. 33. After considering this evidence, she concluded that her fatigue and headaches "tend to wax and wane, and she has engaged in conservative treatment."[5] R. 35.

My review of the record finds no evidence undermining the ALJ's conclusion. Ms. Arroyo cites two additional records concerning her headaches in her briefing, Doc. No. 6, at 5–6 (citing R. 483, 1059), but neither record appears to contradict the ALJ's conclusion, as they merely state the presence of headache-related disorders. Ms. Arroyo also cites an additional record in her brief concerning her fatigue, *id.* at 5 (citing R. 1096), but this record simply states that she is "positive for fatigue." Accordingly, based on the record before me, I find the ALJ properly addressed material evidence concerning Ms. Arroyo's headaches and fatigue, and her conclusion is supported by substantial evidence.

---

[5] The conclusion that Ms. Arroyo received "conservative" treatment is not supported by opinion evidence, at least not any cited by the ALJ. It may be appropriate for a doctor to form an opinion that one would expect to see a more aggressive treatment history for a medical issue. Such an opinion would be based upon the doctor's years of medical training and clinical experience, and it would enable him to come to some general rule-of-thumb about the relationship between aggressive treatment history and the severity of the disorder. Such an opinion is often offered by an examining or consulting physician and can form the basis of an ALJ's determination that the level of treatment is not commensurate with the limitations identified by the treating physician. But the ALJ is not free to "go it alone." It is not permissible for an ALJ to arrive at such a conclusion, absent substantial support in the medical evidence in the record before her. Conservative treatment for a particular condition may mean that aggressive treatment does not offer much hope of success, rather than indicate that the condition is mild. Without the benefit of years of training and clinical experience that a physician brings to bear in evaluating whether a course of treatment is "conservative," and the significance of conservative versus aggressive treatment, the conclusion is not supported by substantial evidence. Since this error is harmless in light of the accompanying analysis, I will not remand on this basis.

Ms. Arroyo also argues that the ALJ erred by asking the vocational expert questions about acceptable absenteeism and an inability to sit, stand, and walk for eight hours per day, but failed to incorporate this line of questioning into her RFC analysis. Doc. No. 6, at 8. It is common, and prudent, however, for an ALJ to ask more than one hypothetical question of a vocational expert to flesh out the consequences of different RFC findings. An ALJ does not endorse a particular RFC by asking a question. That happens in the ALJ's decision. The issue on appeal is whether the ALJ's decision was based on substantial evidence, not whether another decision – based on the answer to an alternative hypothetical question asked of the vocational expert – would have been supportable. Because I find that the ALJ's decision not to incorporate further limitations into Ms. Arroyo's RFC is supported by substantial evidence, I will leave her conclusion undisturbed.

## CONCLUSION

Ms. Arroyo is not entitled to relief on any of her claims. The ALJ's decision was supported by substantial evidence and Ms. Arroyo's contentions are meritless. Therefore, I deny Ms. Arroyo's request for review and affirm the final decision of the Commissioner.

                                                   **BY THE COURT:**

                                                   **RICHARD A. LLORET**
                                                   **U.S. Magistrate Judge**